UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                                             Plaintiff,

                                    -vs-

$541,395.06 U.S. CURRENCY, *et al*.

                                          Defendants.

DECISION & ORDER

10-CV-6555-CJS

---

**APPEARANCES**

| | |
|---|---|
| For Plaintiff: | Grace M. Carducci, A.U.S.A.<br>United States Attorney's Office<br>100 State Street, Fifth Floor<br>Rochester, New York 14614 |
| For Defendant: | Joseph R. Amisano, Esq.<br>100 Meridian Centre Blvd Ste. 325<br>Rochester, New York 14618 |

**INTRODUCTION**

**Siragusa, J.** This case is before the Court on the Motion of The United States of America ("the Government") seeking to strike the claim of Joseph R. Amisano, Esq. ("the claimant"). Applying the appropriate standard of law, the Court determines that the claimant lacks standing in this matter and grants the Government's application.

**FACTUAL BACKGROUND**

On September 28, 2010, the Government filed a Verified Complaint pursuant to 18 U.S.C. § 981 (a)(1)(A) and (a)(1)(C), seeking forfeiture of the proceeds of an alleged Ponzi scheme conducted by the late Ashvin Zaveri, including: $543,395.06 of United States currency; real property located at 7881 Hidden Oaks, Pittsford, New York; approximately

one hundred thousand dollars worth of seized jewelry; two William Penn Life Insurance Company policies; and the rights, title, and interests in twenty-five of Zaveri's business partnerships. The Government asserts that the $543,395.06 in seized funds ("the defendant currency") represents proceeds of the alleged Ponzi scheme.

On June 15, 2010, the Government instructed Zaveri's attorney, the claimant, to take custody of the defendant currency alleging it represented fraudulent proceeds. The claimant deposited the defendant currency into an M&T bank account in his own name. Three days later, on June 18, 2010, the claimant, describing himself as Zaveri's agent, opened a commercial deposit account in Zaveri's name for the purpose of holding the defendant currency.

On October 7, 2010, the Court issued an Order for Issuance of Arrest Warrants in Rem for the defendant currency. On November 2, 2010, the Court held a proceeding regarding the Arrest Warrant in Rem and, the claimant alleges, on this date the Government caused the funds to be transferred out of his account with no notice to him and no opportunity to be heard.

On December 1, 2010, the Court ordered the M&T Bank branch holding the defendant currency to turn over the funds to the United States. On December 29, 2009, the Government served a copy of the Arrest Warrant in Rem, a Notice of Forfeiture Action, and Verified Complaint on the claimant. The Notice of Action stated

> The person receiving direct notice of this action, who asserts an interest in any of the defendant property may contest the forfeiture by filing a claim (which must identify the specific property claimed, identify the claimant and the claimant's interest in the property, and be signed by the claimant under penalty of perjury) in the United States District Court, Western District of New York . . . by February 24, 2011, in accordance with Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture

>Actions. Additionally, any claimant must serve and file an Answer to the Complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure within 21 days after filing the claim.

Aff. in Support of Not. to Strike Claim ¶ 6.

On February 24, 2011, the claimant filed a Verified Claim asserting an ownership interest in the defendant currency as the signatory of the bank account from which it was seized.[1] In his Verified Claim, the claimant asserts he has a lien against Zaveri and the defendant currency as a result of $154,600 in unpaid legal fees that accrued by the time of Zaveri's death. On March 18, 2011, twenty-two days after filing a Verified Claim, the claimant filed an Answer, reasserting an alleged ownership interest in the defendant currency.

On May 24, 2012, the Government filed a Notice of Motion, moving this Court to strike Amisano's claim, contending he lacks standing under Article III of the Constitution and statutory standing under Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Forfeiture Rules").

Written responses to the motion were due June 29, 2012, however the claimant filed no written response. Oral arguments were held on August 16, 2012.

## STANDARDS OF LAW

"In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." *United States v.*

---

[1] On February 24, 2010, the claimant filed a second Verified Claim asserting an ownership interest in the "Clinton County Kentucky leases." ECF No. 43. However, the claimant did not file an Answer or otherwise demonstrate an intent to move forward with this claim. The Government does not address this claim in its Motion to Strike.

*Cambio Exact, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999). Article III standing relates to the claimant's ability to demonstrate an interest in the seized property that is sufficient to satisfy the case or controversy requirement of Article III.[2] *United States v. 8 Gilcrease Lane*, 641 F. Supp. 2d 1, 5 (D. D.C. 2009), citing Stefan D. Cassella, Asset Forfeiture Law in the United States, § 9-4 at 326 (2007). Statutory standing relates to a claimant's ability to demonstrate compliance with the statutory and procedural requirements imposed by Congress. *Id*.

## A. Article III Standing

To demonstrate Article III standing, the claimant must allege "a distinct and palpable injury to himself that is the direct result of the putatively illegal conduct of the adverse party and likely to be redressed by the requested relief." *Cambio Exact, S.A.*, 166 F.3d at 526. In civil forfeiture actions, the injury generally derives from a demonstration that an innocent third party has an ownership or possessory interest in the property that has been seized. *See Id.* A claimant may offer proof of an ownership interest by demonstrating "actual possession, dominion, control, title, or financial stake*"* in the specific forfeited property.

---

[2]Article III, Section 2 of the Constitution provides as follows:

> The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

*United States v. Contents of Account Numbers 208–06070 and 208–06068–1–2*, 847 F. Supp. 329, 333 (S.D.N.Y. 1994); *see also United States v. Collucio*, 51 F.3d 337, 339 (2d Cir. 1995).

While ownership may provide evidence of standing, there must also be an injury. *Cambio Exacto, S.A.* 166 F.3d at 527 (noting "we have, for example, denied standing to 'straw' owners who do indeed 'own' the property, but hold title to it for somebody else. Such owners do not themselves suffer an injury when the property is taken.").

State law determines whether the property interest in a seized property is sufficient to establish standing. *United States v. One 2004 Land Rover Range Rover, VIN: SALME11464A175730 seized from Douglas Turnage*, No. 07-CV-818S, 2009 WL 909669 (W.D.N.Y. Mar. 31, 2009) *aff'd sub nom. United States v. One 2004 Land Rover Range Rover*, 369 F. App'x 208 (2d Cir. 2010). Here, the defendant currency was located in New York, so New York law defines the contours of the property right.

Under New York law, bank depositors generally do not retain ownership of funds they deposit. *See, e.g., Peoples Westchester Sav. Bank v. Fed. Deposit Ins. Corp.*, 961 F.2d 327, 331 (2d Cir. 1992) (distinguishing general accounts, where the depositor does not retain ownership rights in the specific deposited funds, from "special" accounts)*; United States v. Ribadeneira*, 920 F.Supp.553, 555 (S.D.N.Y. 1996) (finding holders of general bank accounts "can have no interest in particular assets forfeited" and therefore no standing to contest forfeiture "unless they have already secured a judgment . . . against a particular item").

Only in exceptional cases where depositors open a "special" account do they retain ownership rights in their deposits and standing to challenge the forfeiture of those deposits. *Id.* Whether an account is "special" depends upon the mutual intent of the parties. *Peoples Westchester Sav. Bank*, 961 F.2d at 331. Absent evidence of mutual intent to create a "special" account wherein the depositor retains ownership, New York law presumes that deposits are not "special." *Id.* This principle applies to both attorneys and members of the general public. *See id*. at 332 (finding an attorney's interest on lawyer account (IOLA) was a general account because there was no evidence of mutual intent to create a "special" account).

To demonstrate Article III standing, a claimant must do more than demonstrate that he or she was owed money. Rather, the claimant must demonstrate a specific ownership interest in the defendant currency. Where the defendant currency is bank funds, the claimant must also rebut the strong presumption that he or she deposited the funds in a "general" account thereby relinquishing any specific ownership interest in the funds. *See Id.*

## B. Statutory Standing

To demonstrate statutory standing, a civil forfeiture claimant must demonstrate compliance with the statutory requirements imposed by Congress in the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Forfeiture Rules"). Where a claimant fails to comply with the deadlines provided by the Forfeiture Rules, his claim may be stricken for lack of statutory standing. *See United States v. $27,601.00 U.S. Currency*, 800 F. Supp. 2d 465, 467 (W.D.N.Y. 2011); *see also, Cambio Exacto, S.A.* 166

Only in exceptional cases where depositors open a "special" account do they retain ownership rights in their deposits and standing to challenge the forfeiture of those deposits. *Id.* Whether an account is "special" depends upon the mutual intent of the parties. *Peoples Westchester Sav. Bank*, 961 F.2d at 331. Absent evidence of mutual intent to create a "special" account wherein the depositor retains ownership, New York law presumes that deposits are not "special." *Id.* This principle applies to both attorneys and members of the general public. *See id*. at 332 (finding an attorney's interest on lawyer account (IOLA) was a general account because there was no evidence of mutual intent to create a "special" account).

To demonstrate Article III standing, a claimant must do more than demonstrate that he or she was owed money. Rather, the claimant must demonstrate a specific ownership interest in the defendant currency. Where the defendant currency is bank funds, the claimant must also rebut the strong presumption that he or she deposited the funds in a "general" account thereby relinquishing any specific ownership interest in the funds. *See Id.*

## B. Statutory Standing

To demonstrate statutory standing, a civil forfeiture claimant must demonstrate compliance with the statutory requirements imposed by Congress in the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Forfeiture Rules"). Where a claimant fails to comply with the deadlines provided by the Forfeiture Rules, his claim may be stricken for lack of statutory standing. *See United States v. $27,601.00 U.S. Currency*, 800 F. Supp. 2d 465, 467 (W.D.N.Y. 2011); *see also, Cambio Exacto, S.A.* 166

F.3d at 526 (finding a claimant who fails to meet deadlines provided by Forfeiture Rules lacks statutory standing).

Courts routinely strike claims in federal forfeiture actions where a claimant fails to comply with the deadlines provided by the Forfeiture Rules. *See United States v. Cambio Exacto, S.A.*, 166 F.3d at 527. However, a court has the discretion to excuse a missed deadline if the claimant can show "excusable neglect." *United States v. One 1978 Piper Navajo Aircraft,* 748 F.2d 316, 318 (5th Cir.1984).

In *Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380 (1993), the Supreme Court held that, "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer,* 507 U.S. at 388. The Court went on to state, "[b]ecause Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. An analysis of excusable neglect requires the Court to examine four factors including: the danger of prejudice to the non-movant, the length of the delay and its impact on proceedings, the reason for the delay including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Id.*

The Second Circuit focuses particularly on the reason for the delay, noting that "the equities will rarely if ever favor a party who '"fail[s] to follow the clear dictates of a court rule' and . . . where 'the rule is entirely clear, we continue to expect that a party claiming

excusable neglect will, in the ordinary course, lose under the *Pioneer* test.'" *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366-67 (2d Cir. 2003) (quoting *Canfield v. Van Atta Buick/GMC Truck*, 127 F.3d 248, 251 (2d Cir. 1997), *cert. den.* 522 U.S. 1117 (1998)).

## ANALYSIS

### A. Article III Standing

Applying the appropriate standard of law, the Court determines that the claimant has not demonstrated Article III standing in this matter. The claimant has failed to offer evidence of a specific ownership interest in the defendant currency or evidence of a perfected lien attached to the defendant currency. Additionally, the claimant has failed to show a mutual agreement with M&T Bank that the claimant would retain ownership of the deposited funds. *See Peoples Westchester Sav. Bank*, 961 F.2d at 331. Further, the claimant has failed to show dominion over the funds. *See United States v. Contents of Account Numbers 208–06070 and 208–06068–1–2*, 847 F. Supp. 329, 333 (S.D.N.Y. 1994). According to M&T Bank's Answer ¶ 58, Dec. 8, 2010, ECF No. 14:

> The Subject Account was restrained under New York state law by service of judgment enforcement devices that forbid their recipients from transferring any portion of the Subject Account. The same judgment enforcement devices also subject their recipients to penalties provided by New York state law if those funds are transferred or conveyed in contravention of the restraints.

The Court concludes that the claimant is a general unsecured creditor having no specific ownership interest in the defendant currency. *See United States v. Ribadeneira*, 105 F.3d 833, 837 (2d Cir. 1997); *United States v. Schwimmer*, 968 F.2d 1570, 1581 (2d Cir. 1992).

*B. Statutory Standing*

On December 29, 2009, the Government served a copy of the Notice of Forfeiture Action on the claimant. The Notice of Action clearly set out the deadlines and requirements of the Forfeiture Rules:

> The person receiving direct notice of this action, who asserts an interest in any of the defendant property may contest the forfeiture by filing a claim (which must identify the specific property claimed, identify the claimant and the claimant's interest in the property, and be signed by the claimant under penalty of perjury) in the United States District Court, Western District of New York . . . by February 24, 2011, in accordance with Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Additionally, any claimant must serve and file an Answer to the Complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure within 21 days after filing the claim.

Not. of Forfeiture Action, Ex. 1-4.

On February 24, 2011, the claimant timely filed a Verified Claim in which he asserted an ownership interest in the defendant currency. Thereafter, the claimant had twenty-one days to file an answer. He filed his answer twenty-two days later on March 18, 2011.

On May 24, 2012, the Government filed a Notice of Motion and Motion to Strike Claim, contending that the claimant lacks statutory and Article III standing. In its motion, the Government contended that the claimant has yet to file an answer regarding his claim to the defendant currency. The docket demonstrates that the claimant's answer was filed, albeit a day after the deadline provided by Rule G of the Forfeiture Rules. Additionally, the docket demonstrates that the claimant failed to attach a certificate of service to his answer or otherwise demonstrate proof of service of his answer on the Government. *See* ECF No.

56.[3] In any event, the record demonstrates that the claimant filed an answer in regards to the defendant currency, but it was untimely pursuant to Rule G of the Forfeiture Rules.

The claimant has failed to provide the Court with an explanation of mitigating factors which can excuse a late filing, such as a good faith attempt to file on time, detrimental reliance on government misinformation, or the expenditure of considerable time preparing for trial. *See United States v. $1,437.00 U.S. Currency*, 242 F. Supp. 2d 193, 195 (W.D.N.Y. 2002). The Court therefore concludes that the claimant lacks both statutory and Article III standing in this matter.

## CONCLUSION

The Government's Motion, ECF No. 81, seeking an Order striking the claim of Joseph R. Amisano, Esq., is granted.

IT IS SO ORDERED.

Dated:   August 20, 2012
         Rochester, New York
                    ENTER:

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge

---

[3]The Government's confusion in regards to the answer could be due to lack of service. It could also perhaps be explained by error in confusing claims filed by the claimant. In addition to filing a Verified Claim for the defendant currency, the claimant also originally filed a second Verified Claim asserting an ownership interest in the Clinton County Kentucky leases. *See* ECF No. 43. The claimant failed to file an answer in respect to the Clinton County Kentucky leases. The Government ignores this claim in its entirety in its Notice of Motion and Motion to Strike Claim.